IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Derrick Rivera,<br><br>        Plaintiff,<br><br>v.<br><br>Georgetown City Police Dept; Inv Keith Smalls; Inv Johnell Sparkman; Inv Dmytruk; and Cpl Donald Tempalsky,<br><br>        Defendants. | Civil Action No.2:11-cv-00432-CWH-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgment (Dkt. No. 24.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The plaintiff brought this action on or about January 26, 2011. (See Dkt. No. 1.) On May 19, 2011, Defendants filed a Motion for Summary Judgment. (Dkt. No. 24.) By order filed May 20, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 25.) When Plaintiff failed to respond, the undersigned issued an Order on June 29, 2011, giving the Plaintiff through July 19, 2011, to respond to the Motion for Summary Judgment. (See Dkt. No. 29.) Plaintiff did not timely respond, and the undersigned issued a Report and Recommendation ("R&R") recommending that the instant action be dismissed with prejudice for lack of prosecution and for failure to comply with the Court's orders. (See Dkt. No. 32.) After the R&R was

issued, Plaintiff filed a Response in Opposition to the Motion for Summary Judgment on or about August 18, 2011. (See Dkt. No. 35.) On June 8, 2012, the Honorable C. Weston Houck entered an Order declining to adopt the undersigned's R&R recommending dismissal for failure to prosecute and failure to comply with the Court's orders. (See Dkt. No. 38.) Judge Houck remanded the case to the undersigned for a Report and Recommendation on the pending Motion for Summary Judgment. (See id.)

## **PROCEDURAL FACTS**

Plaintiff, who is currently housed at Lee Correctional Institution, alleges claims pursuant to 42 U.S.C. § 1983. (See Dkt. No. 1.) Plaintiff alleges that on August 9, 2010, he was a passenger in a vehicle that was pulled over for a traffic stop by Officer Tisdale. (Dkt. No. 1 at 3 of 5.) According to Plaintiff, although Tisdale initiated the traffic stop, two other officers–Defendants Investigator Keith Small and Investigator Johnell Sparkman–thereafter arrived on the scene. (Id.) Plaintiff alleges that Defendant Small "came to the passenger side door and jump[ed] in the vehicle and tried to arrest" Plaintiff, so the driver of the stopped vehicle, Dexter Stephens, accelerated. (Id.) Plaintiff states that after a "short pursuit," he "jumped from the vehicle and ran to [his] mother's newly rented mobile home." (Id.) According to Plaintiff, "officers showed up in the area about" two to five minutes later. (Id.) Plaintiff alleges that approximately one hour after the pursuit, the "city police officers climb[ed]" in the window of the mobile home, arrested Plaintiff, and seized his cellular telephone. (Id.) Plaintiff contends that he was arrested illegally and that his belongings were illegally seized. (Id. at 4 of 5.) According to Plaintiff, his Fourth and Fifth Amendment rights were violated. (Id. at 3-4.) Plaintiff states (verbatim),

> There clearly was no exigent circumstances to invade my home in that unlawful way. There was no search warrant to enter my home, no consent from the tenant Desiree Mosley (my mother) of no probable cause that I even ran in that home because the city police would not have surrounded four whole blocks if they knew for sure I was in that mobile home. There was just

2

a mere suspicion since my mother was renting the home. Therefore I was illegally arrested and my belongings [were] illegally seized.

(Id. at 3-4.) In addition to monetary damages, Plaintiff seeks the following in the "relief" section of his Complaint: (a) that his seized property be returned, (b) "that those law enforcement officers involved be investigated and also off [Plaintiff's] case,"and (c) that Georgetown County "drop and dismiss all charges prior to illegal arrest." (Id. at 5.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants filed a Motion for Summary Judgment on May 19, 2011. (Dkt. No. 24.) Along with their Motion for Summary Judgment, Defendants filed the affidavits of Keith Small, Johnell Sparkman, and Donald Tempalsky. (See Dkt. No. 24-3, Dkt. No. 24-4, Dkt. No. 24-5.) On August 5, 2010, Defendant Small, an investigator with the City of Georgetown Police Department, was assigned to investigate a robbery that took place on

3

August 3, 2010, on Emanuel Street. (See Small Aff. ¶¶ 1-3.) Small states in his Affidavit that Plaintiff, along with another man, perpetrated this robbery when the two "invaded a home located at Emanuel Street and robbed men playing poker at the residence." (Id. ¶ 2.) Small states that Plaintiff "was armed with a handgun and held the gun to each man's head while the Plaintiff's accomplice searched each victim and removed their cash and other property." (Id.) Small indicated in his Affidavit that he believed Plaintiff to be "part of a robbery group known as the 'Jack Boys,'" who were "known to be armed and dangerous" and who "specialized in robbing poker games and people involved in illegal activities" because those victims were less likely to report the robbery. (Id. ¶ 4.) On August 5, 2010, a Georgetown magistrate issued arrest warrants for Plaintiff on the charges of First Degree Burglary and Armed Robbery. (Id. ¶ 5.) Small states that after he obtained the warrants, he entered Plaintiff into the NCIS database as a wanted individual, and he included in the NCIS database a description that the Plaintiff was "armed and dangerous, known to travel in a blue crown vic with S.C. paper tag." (Id. ¶¶ 6-7.)

On August 9, 2010, Corporal Willie Tisdale–who is not a defendant in the instant action–stopped a dark blue crown victoria at the 200 block of Lafayette Street in Georgetown, South Carolina. (Id. ¶ 8.) Tidsale stopped the vehicle because "the driver's view of the road was partially obstructed by a cracked windshield in the driver's line of sight," and when Tisdale recognized the car as matching fellow officer Small's NCIS description of Plaintiff's vehicle, Tisdale contacted Small. (Id. ¶¶ 9-11.) Tisdale asked Small to confirm that the vehicle Small was looking for had a 45-day South Carolina tag on it; Small confirmed that it did. (Id. ¶ 11.) Small informed Tisdale that Small would meet Tisdale at the traffic stop, and Tisdale radioed dispatch for additional back up. (Id. ¶¶ 12-13.)

According to Small, when he arrived at the traffic stop, he confirmed that the vehicle's front passenger, the Plaintiff, had warrants out for his arrest. (Id. ¶ 14.) Small "approached

4

the passenger side of the vehicle, opened the Plaintiff's door, told the Plaintiff he was under arrest, and handcuffed his right wrist." (Id. ¶ 15.) Small instructed the Plaintiff to undo his seatbelt and step out of the vehicle, and when Plaintiff refused, Small "reached inside the vehicle to undo the Plaintiff's seatbelt." (Id. ¶¶ 16-17.) Small states that as he was "attempting to undo the Plaintiff's seatbelt, the Plaintiff's vehicle sped away." (Id. ¶ 18.) According to Small, "[w]hen the vehicle sped away, Small still had one hand on the handcuff and had been in the process of attempting to remove the Plaintiff from the vehicle. As a result, Small was dragged down the street ten to fifteen feet before being knocked backwards into a ditch." (Id. ¶ 19.)

Small states that after he was knocked into the ditch, the Plaintiff's vehicle "led Small's fellow officers on a high-speed chase through a Georgetown residential area." (Id. ¶ 20.) During the chase, the Plaintiff and the driver abandoned the vehicle and began to flee on foot. (Id. ¶ 21.) According to Small, the Plaintiff "was last seen ten feet from a trailer at 506 South Merriman Road, before Officer Tempalsky lost visual on the Plaintiff." (Id. ¶ 22.) Small rejoined the search and "overheard on the police radio . . . that the suspects abandon[ed] the vehicle on Butts Street and were fleeing by foot." (Id. ¶¶ 23-24.) Small states that due to his familiarity with the Plaintiff, he "knew the Plaintiff's mother had begun renting a trailer at South Merriman Road, which is near Butts Street." (Id. ¶ 25.) Small "noted the trailer was three houses down and approximately 100 feet from where the Plaintiff had abandon[ed] the vehicle." (Id. ¶ 26.)

Small states that he approached the trailer, knocked on the door, and announced that the police were present. (Id. ¶ 29.) No one answered the door, so Small checked the back door and discovered it was unlocked. (Id. ¶ 30.) Small states that when he realized the back door was unlocked, he called for backup units. (Id. ¶ 31.) Small checked the back door again when backup arrived and the door was locked, meaning the door had been locked

5

from the inside after Small checked it earlier. (Id. ¶ 32.) Small "heard noises indicating movement inside the trailer." (Id. ¶ 33.)

According to Small, while he and approximately ten officers had the trailer surrounded, "a black male approached Sgt. Scogin and reported that another black male wearing one handcuff was climbing over the fence of Howard School and running away." (Id. ¶ 37.) Because the description matched the Plaintiff, "several officers left the trailer in pursuit of this tip," but Small "remained behind with Officer Dmytruk to maintain the perimeter at the trailer" because Small "was confident someone remained inside the trailer." (Id. ¶¶ 38-39, 42.) Small states that officers investigating the tip soon discovered that the "alleged sighting of the Plaintiff was fabricated," and "[l]ater information indicated the alleged 'tip' was planted by one of the Plaintiff's friends for the purpose of redirecting the search away from the trailer." (Id. ¶¶ 40, 41.)

While Small was maintaining the perimeter, Officer Sparkman "contacted the owner of the trailer and the owner confirmed that the Plaintiff's mother had recently begun renting the trailer, though she had not yet moved in," and the owner of the trailer "gave the officers permission to enter and search the trailer." (Id. ¶¶ 43-44.) Small stated in his Affidavit that he "repeatedly attempted to get the subject to open the door to the trailer or to surrender through knocking on the door, announcing the police presence, and requesting the Plaintiff open the door." (Id. ¶ 45.) According to Small, Agent Holt called the Plaintiff's cell phone in an effort to make contact with the Plaintiff, but Plaintiff did not respond to the calls. (See id. ¶¶ 46-47.) Small states, "After these repeated efforts did not yield results, the police captain arrived at the trailer and gave Small and Dmytruk permission to enter the residence through an unsecured window." (Id. ¶ 48.)

Upon entering the trailer, Small and Dmytruk "cleared the trailer room by room while announcing they were police officers and instructing the Plaintiff to come out." (Id. ¶ 49.)

6

Small found Plaintiff hiding in the wall near the air unit and placed Plaintiff under arrest for "resisting the earlier arrest at the initial traffic stop, as well as the Burglary First and Armed Robbery charges." (Id. ¶¶ 51-53.) Small found a pocket knife in the wall space where Plaintiff was hiding, and during the search of Plaintiff incident to arrest, they found Plaintiff's cell phone. (Id. ¶¶ 54-55.)[1] Small stated that "[a] search warrant was later obtained for the Plaintiff's cell phone," and "information discovered pursuant to the warrant revealed that the Plaintiff had been using his cell phone to communicate with individuals outside the trailer, who in turn provided the Plaintiff with updates on police movement." (Id. ¶ 64.)

Small further states that a few days after Plaintiff's arrest, a gun was discovered in some bushes on the 1800 block of Butts street, which is in the same area that Plaintiff and the driver fled on foot. (Id. ¶¶ 56-57.) The driver, Dexter Stevens, later identified that gun as belonging to Plaintiff, and Stevens admitted that he disposed of the gun as he fled. (Id. ¶¶ 58, 61.)

Defendants contend they are entitled to summary judgment for several reasons: (1) Plaintiff's constitutional rights were not violated, (2) the entry was justified due to the officers' "hot pursuit" of Plaintiff, and (3) they are protected by qualified immunity. (See generally Dkt. No. 24-1.) Plaintiff filed a Response in Opposition to the Motion for Summary Judgment. (See Dkt. No. 35.)

---

[1] In his Complaint, Plaintiff complained that his "belongings [were] illegally seized." (Dkt. No. 1 at 4 of 5.) Defendants presented evidence, however, that Plaintiff's cell phone was discovered on his person during the search incident to his arrest, and a search warrant was later obtained for Plaintiff's cell phone. (See Small Aff. ¶¶ 55, 64.) A search incident to an arrest is an exception to the warrant requirement. See United States v. Robinson, 414 U.S. 218 (1973). Moreover, Plaintiff was arrested for resisting arrest, and the officers were justified in seizing the cell phone at that time because it could have contained evidence of resisting arrest. See S.C. CODE ANN. § 16-9-320. Finally, Defendants obtained a search warrant prior to searching the cell phone, and that search "revealed that the Plaintiff had been using his cell phone to communicate with individuals outside the trailer, who in turn provided the Plaintiff with updates on police movement." (Small Aff. ¶ 64.) On these facts, Plaintiff has no constitutional claim for the seizure of his cell phone. See United States v. Murphy, 552 F.3d 405, 410 (4th Cir. 2009).

As noted above, Defendants first contend that Plaintiff's constitutional rights were not violated. (Dkt. No. 24-1 at 10-12.) Defendants argue that Plaintiff had no reasonable expectation of privacy in the trailer because, *inter alia*, Plaintiff did not own, rent, or live in it. (Id. at 10.)

The Fourth Amendment provides,

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. It is not clear from a review of Plaintiff's filings whether Plaintiff asserts (a) that his mother rented the trailer, and Plaintiff lived there with her, or (b) that his mother rented the trailer, and Plaintiff did not live there with her. The undersigned therefore addresses both scenarios herein.

To the extent Plaintiff asserts that Defendants could not lawfully enter the home in which he lived to arrest him, that argument fails. In Payton v. New York, 445 U.S. 573 (1980), the Supreme Court "concluded that police may enter into a home without a search warrant in order to execute a warrant only if 'there is reason to believe [that the subject of the warrant] is within.'" United States v. Hill, 649 F.3d 258, 262 (quoting Payton, 445 U.S. at 602). "Generally, circuits have broken down the analysis of whether the entry was lawful into two conjunctive parts: (1) whether there is reason to believe that the location is the defendant's residence, and (2) whether or not there was a 'reasonable belief' that he would be home." Id. (citations omitted). Assuming the trailer was Plaintiff's residence, the critical question is whether police had "reason to believe" Plaintiff was in the trailer. Id. In Hill, the Fourth Circuit noted that some circuits have found that reasonable belief is the same as probable cause, while others have found "that the requirements of reasonable belief are

8

something less than probable cause." Id. at 263 (citing, *inter alia*, United States v. Hardin, 539 F.3d 404, 416 (6th Cir. 2008); United States v. Barrera, 464 F.3d 496, 501 n.5 (5th Cir. 2006); United States v. Thomas, 429 F.3d 282, 286 (D.C. Cir. 2005)). The Fourth Circuit "decline[d] to reach a conclusion [in Hill] as to whether 'reason to believe' is as stringent as 'probable cause'" because in that case, "the police entry was not justified even under the less stringent interpretation of the standard." Id.

Taking the evidence in the light most favorable to the Plaintiff, the undersigned concludes that police had reason to believe Plaintiff was in the trailer.[2] As the Fourth Circuit noted in Hill, courts in this circuit "have sanctioned entry only where multiple facts support a reason to believe that the subject of the arrest warrant is present at the time of entry." Id. at 264. Here, multiple facts gave police a reason to believe Plaintiff was present in the trailer. It is undisputed that Defendants were pursuing Plaintiff when he fled on foot in an area very close to the at-issue trailer. In fact, Tempalsky's Affidavit indicates that Tempalsky, who was pursing Plaintiff on foot, lost sight of Plaintiff when Plaintiff "was approximately 10 feet from the trailer at South Merriman Road." (Tempalsky Aff. ¶¶ 15-21.) Plaintiff contends that because Tempalsky lost sight of Plaintiff, police had no reason to believe Plaintiff was in the trailer. (Dkt. No. 35 at 1 of 2.) The undersigned disagrees. Tempalsky lost sight of Plaintiff while Plaintiff was a few feet from the trailer, and Defendant Small knew Plaintiff's mother was renting this trailer. It is also undisputed that Small knew someone was in the trailer, given the sound of movement coming from inside the trailer and the fact that the unlocked back door was locked during the course of events. On these facts, the undersigned concludes that police had reason to believe Plaintiff was in his mother's trailer. See United States v. Morgan, 972 F.2d 343, at *2 (4th Cir. 1992) (unpublished table decision) ("It is

---

[2]For purposes of this R&R, the undersigned assumes–without deciding–that the "reason to believe" standard is equivalent to the "probable cause" standard.

9

undisputed that the officer saw Morgan running toward his house. This fact, coupled with the officer's testimony that the interior lights were first on and then off, is sufficient to provide the officers with a reason to believe that Morgan was in his home."). Thus, to the extent Plaintiff claims Defendants unlawfully entered the home in which he lived to arrest him, that claim fails, and the undersigned recommends granting summary judgment to Defendants.

If, on the other hand, Plaintiff asserts that Defendants could not enter the home of a third party (his mother) to arrest him, Plaintiff remains unentitled to relief. In Steagald v. United States, 451 U.S. 204 (1981), the Supreme Court held that, absent a search warrant, exigent circumstances, or consent, a law enforcement officer may not legally search for the subject of an arrest warrant in the home of a third party. Steagald, 451 U.S. at 205-06. Steagald, however, provides no assistance to Plaintiff because "a key element of the holding[ in] . . . *Steagald* [is that] the Fourth Amendment protects the rights *of persons who resided in the dwelling searched.*" United States v. Willis, No. 3:10CR186-HEH, 2010 WL 3835099, at *3 (E.D. Va. Sept. 29, 2010). As the court noted in Willis,

> When officers enter a third party's residence for the purpose of executing an arrest warrant, two distinct Fourth Amendment interests are implicated: (1) the target named in the arrest warrant has "an interest in being free from an unreasonable seizure"; and (2) the third-party homeowner has an "interest in being free from an unreasonable search of his home." *Steagald*, 451 U.S. at 216.

Willis, 2010 WL 3835099, at *3. As in Willis, the instant case involves only the former. See id. ("Although *Steagald* would have required a search warrant to protect leaseholder Burton's Fourth Amendment rights, Burton's privacy interests are not in issue."); see also Rakas v. Illinois, 439 U.S. 128, 133-34 (1978) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."); United States v. Kern, 336 Fed. App'x 296, 298 (4th Cir. 2009) ("Nor may Kern complain that the entry onto the property to effect his arrest violated a third-party homeowner's right to be free from an unreasonable search as Fourth

Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." (quotation marks omitted)). To the extent Plaintiff complains about Defendants' entry into a third party's home to arrest him, Plaintiff is not entitled to relief. The undersigned therefore recommends granting Defendants' Motion for Summary Judgment.[3]

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 24) be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

July 19, 2012<br>
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

---

[3] Defendants also contend they are entitled to summary judgment because the entry was justified by "hot pursuit" and because they are entitled to qualified immunity. (See Dkt. No. 24-1 at 13-19.) Because the undersigned has concluded that there is no genuine issue of material fact regarding whether Plaintiff's constitutional rights were violated, these two arguments need not be addressed. However, for the reasons discussed above, Defendants are entitled to qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Because the facts do not present the elements necessary to state a violation of Plaintiff's constitutional rights, the undersigned recommends concluding that Defendants are entitled to qualified immunity.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).